M. David Graubard, Esq.
Kera & Graubard
Attorneys for Debtor
240 Madison Avenue, 7th floor
New York, NY  10016
(212) 681-1600

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re

PRIME PROPERTIES OF NEW YORK, INC.,


Debtor.
-------------------------------------------------------------X

Chapter 11
Case No. 13-44020

CERTIFICATION OF NICK GORDON
IN SUPPORT OF DEBTOR'S MOTION
TO COMPEL RECEIVER TO
TURN OVER PREMISES AND RELATED RELIEF

Nick Gordon, vice-president of the debtor and debtor in possession, hereby

certifies that the following is true under the penalties of perjury:

1.      Affirmant is the vice-president of the debtor and debtor in possession and

makes this Certification based upon his own personal knowledge and information.  I

make this Certification in support of the motion so that the debtor and debtor in

possession can properly perform its duties under Chapter 11 of the Bankruptcy Code.

2.      On June 28, 2013, the debtor filed a voluntary Chapter 11 petition with this

Court.  The debtor owns two buildings at 300 Tenth Avenue and 304 Tenth Avenue,

Brooklyn, New York which consist of 52 residential apartments and three commercial

stores (the "Premises").

3.      After the Chapter 11 petition was filed on June 28, 2013, my attorney M.

David Graubard gave me a letter (Exhibit A annexed to the Graubard Certification) to be

distributed to the tenants at the Premises.

4.    After I left Mr. Graubard's office, I went straight to the managing agent for the State Court Receiver, whose managing office is Senior Realty, 7913 Third Avenue in Bay Ridge, Brooklyn.  I spoke with Mr. Harry Horowitz and I gave him copies of the letters that Mr. Graubard gave me (Exhibits A and B annexed to the Graubard Certification).

5.    I asked Mr. Horowitz to give me a set of keys and the tenant files.  He told me that he already knew about the Chapter 11 case and that he had a copy of the letter that Mr. Graubard had sent to Mr. La Spina.  He also told me that he was not giving me anything, that I was wasting my time and "get the [expletive] out of my office."

6.    I left his office and called the Police Department, but before the police could arrive, Mr. Horowitz closed his office.  Therefore, I waited for the police and then left the managing agent's office.

7.    I immediately went to the Premises and gave a copy of Mr. Graubard's letter to the three commercial tenants.  I also started to distribute the letter to the residential tenants, when several gentlemen came over to me and made me leave the building.  One of the gentlemen identified himself as the superintendent, whom I recognized because I had seen him at Mr. Horowitz's office earlier that day.  These men prevented me from remaining in the building.  Apparently all of them worked for the managing agent and also lived in the building.  Annexed hereto as Exhibit A is a picture of the mailboxes at 300 Tenth Street with the names of three of the gentlemen who were involved.

8.    On June 29, 2013, I returned to the buildings in order to distribute the

letters to the remaining tenants whom I had not reached the day before (June 28th). I tried to open the locks that led to the basement. I again called the police and had to cut the locks to get access to the basement.

9.    When I got to the basement, I saw some of the same gentlemen from the day before taking many boxes and garbage bags from the basement, and loading them into a box truck parked outside.

10.    When the police arrived, I showed them the papers and the police informed the gentlemen that they could not stay in the building any longer. I went inside with the policemen and the sight in the basement of all the garbage is almost indescribable. Annexed hereto as Exhibit B are copies of pictures that I personally took at that time. The first two pictures on Exhibit B show the garbage strewn on the stairway that leads to the door that is between the two buildings. The other pictures in Exhibit B show old strollers, telephone set and bags of garbage strewn all over the basement of 300 Tenth Street. These pictures were taken after the managing agent's men had already removed some garbage boxes and bags.

11.    Annexed hereto as Exhibit C are copies of pictures that I took that day (June 29, 2013) of the trash compactor that was so stuffed that the door would not open. The first picture shows the closed door and the three following pictures show the open door after we were successful in prying open the trash compactor door and the build up of garbage in the trash compactor which, according to my estimate, must have been left for at least two weeks.

12.    On June 29, 2013, I put new locks in the basement as protection. However, when I returned on July 2, 2013, the locks had been broken open. Annexed

hereto as Exhibit D are copies of pictures that I took on that day that shows the new locks that had been broken.

13.    On July 1, 2013, I returned to Mr. Horowitz's office and was told that they wanted me out of the office.  Therefore, I left Mr. Horowitz's office and went back to the buildings with several of my employees from my construction business to start to clean up the garbage that was in the basement.  I ordered a container because of the volume of the garbage that was left in the basement.  The container company informed me that because of the holiday, they could not deliver a container until Monday, July 8, 2013.

14.    I also observed a cable connected to a light fixture in the basement that went up to the window of apartment 2.  This is one of the apartments occupied by the employees of the managing agent, which indicates improper use of electrical service.  Annexed hereto as Exhibit E is a copy of a picture of that extension cord that was plugged into the light socket.

15.    I heard, and have estimated, that the rent roll is approximately $60,000 and when I checked the legal docket of the foreclosure action in Supreme Court, Kings County, I did not find any Receiver's reports having been filed.  A copy of that docket sheet is annexed to the Graubard Certification as Exhibit D.

16.    The debtor needs all of the books and records that the Receiver has, especially leases and tenant files, together with vendor invoices so that the debtor can perform its function under Chapter 11.

17.    The Receiver's managing agent has instructed the tenants to pay him only, pursuant to the notice posted at the Premises (copy attached as Exhibit F). This confuses the tenants and interferes with the debtor's  obligations under Chapter 11.

4

WHEREFORE, Affirmant respectfully requests that this Court grant the debtor's motion to direct Gregory M. La Spina, the Receiver, to turn over the Premises, all personal property, all books and records, including leases and tenant files, to the debtor and debtor in possession, together with such other and further relief as may be proper.

Dated:      Brooklyn, New York
            July 5 , 2013

                                        Nick Gordon, Vice-President of
                                        Debtor and Debtor in Possession