UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

Prime Properties of New York, Inc.,

                                  Debtor.

------------------------------------------------------------X

Case No. 13-44020-cec

Chapter 11

Hon. Carla E. Craig
United States Bankruptcy Judge

## AFFIRMATION JEROLD C. FEUERSTEIN IN SUPPORT OF ORDER EXCUSING TURNOVER OF PROPERTY PURSUANT TO 11 U.S.C. § 543(d)

FTBK Investor II LLC, as Trustee for NY Brooklyn Investor II Trust 19 ("FTBK") the secured creditor of Prime Properties of New York, Inc. (the "Debtor"), and interested party in this Chapter 11 proceeding, by and through its attorneys, Kriss & Feuerstein LLP, respectfully moves this Court for an Order excusing turnover pursuant to 11 U.S.C. §§ 543(d)(1) and 543(d)(2). In support thereof, FTBK respectfully represents as follows:

### PRELIMINARY STATEMENT

1.     As evidenced by the accounts of the tenants at the Property (defined below), this Court should immediately excuse any and all requirements by the court-appointed receiver, Gregory M. LaSpina, Esq. (the "Receiver") from turning over possession and control of the Debtor's property to the Debtor, for the sake of the health, safety and welfare of those tenants who continue to reside at the Property. As set forth more fully below, the facts of this case represents the very essence of why 11 U.S.C. § 543(d) was enacted.

2.     For instance, as indicated in the Affirmation of the Receiver, the Larsen Affidavit, the Affidavit of Harry Horowitz (property manager to the Receiver), and numerous letters from tenants at the Property, the Debtor's principal, Nick Gordon ("Gordon") has demonstrated; (i) outrageous

intimidation tactics and related conduct designed to scare and ultimately force out paying tenants who reside at the property pursuant to valid and enforceable residential leases by and through the use of physical threats, bullying, harassment and various other (illegal) acts, (ii) a long-standing history of misappropriation of both tenants rents and security deposits at the Property, including, but not limited to, Gordon's failure to provide the Receiver with any security deposits from any tenants residing in any of the fifty-five (55) units at the Property (fifty-two (52) of which are residential units), (iii) a history of gross mismanagement at the Property, including, but not limited to, Gordon's failure to maintain such basic utilities at the Property, such as heat, hot water and regular rubbish removal service from the common areas, leading to hundreds of violations being assessed against the Property, and (iv) Gordon's unlawful forced entry and lockout of the Receiver from the Property, on the Petition Date (defined below) - approximately five (5) days ago.

3. Notably, as a result of Gordon's shocking and offensive behavior during the last few days and year, tenants at the Property have begun to organize to protect themselves against Gordon. Such organizing can be seen from members of the Fifth Avenue Committee (the "Committee"). The Committee has prepared and distributed a notice to tenants at the Property (the "Notice") warning other tenants at the Property to keep paying rent to the Receiver until further court order and to keep records of all communications with Gordon.

4. Moreover, as set forth in the Affidavit of Elizabeth Larsen ("Larsen"), a rent-stabilized tenant who has resided at one of the Property for approximately twenty-seven (27) years, Gordon's efforts to intimidate her and her family for the purposes of causing them to vacate the Property, resulted in her and her family obtaining an order physically restraining Gordon from coming in contact with her family. As indicated in the Larsen Affidavit, not only was she personally threated by Gordon as recent as yesterday requiring police intervention, but Gordon's tactics historically include,

but are not limited to, destroying Larsen's family's mailbox and maliciously and falsely advising postal employees that Larsen and her family no longer resided at the Property. As further annexed to the Larsen Affidavit are approximately one-dozen letters from various tenants at the Property (which letters shall not initially be filed on the Court's docket to protect the identity and the safety of those tenants), for the purposes of advising the Court of the intimidation tactics and physical threats made by Gordon to tenants at the Property during the last week.

5.      As set forth in the Receiver Affirmation, in the five (5) days since the Petition Date, the Receiver's Office (and the Receiver's property manager's office), have been inundated with phone calls and letters from tenants at the Property concerned for their safety and the safety of their families.

6.      As a result, FTBK hereby seeks relief in the form of an Order: (i) authorizing the Receiver to remain in possession, custody, and control of the real property of the Debtor, commonly known as 300-304 10th Street, Brooklyn, New York 11215 (Block 1016; Lots 2 and 5) (the "Property"),[1] (ii) excusing the Receiver from any turnover requirement set forth in 11 U.S.C. § 543(a) and (b), including pending resolution of this motion, and (iii) authorizing the Receiver to maintain and operate the Property in the ordinary course of business.

7.      FTBK is entitled to the relief requested herein pursuant to 11 U.S.C. § 543(d), pursuant to the March 23, 2011 Order of the Honorable Anthony J. Cutrona, Appointing Receiver (the "Receivership Order"), and ¶ 2.2(c) of the *Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing* (the "Mortgage"). A copy of the Receivership Order is annexed hereto as Exhibit A. A copy of the Mortgage which was recorded in the NYC Department of Finance Office of the City Register on June 4, 2007 under CRFN No. 2007000287403 is annexed hereto as Exhibit C.

---

1 Upon information and belief the Property consists of two adjacent five-story, residential apartment buildings, which collectively contain a total of fifty-five (55) units, fifty-two (52) of which are residential units on the corner of

8. It is quite clear, that without this Court's immediate intervention and continued supervision, the tenants at the Property, will undoubtedly be subjected every one of Gordon's underhanded tactics to rid the Property of its rent-stabilized tenants.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are §§ 105(a) and 543(d) of the Bankruptcy Code.

## BACKGROUND

10. The Debtor executed a Promissory Note (the "Note") on or about April 30, 2007 in favor of Washington Mutual Bank ("WAMU"), in the original principal sum of $8,000,000.00. A copy of the Note is annexed hereto as Exhibit B.

11. As collateral for the Note, the Debtor executed the Mortgage in favor of WAMU, which encumbers the Property in first lien position.

12. On or about August 18, 2009, the Mortgage was assigned to Fannie Mae by a certain Assignment of Mortgage from the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for WAMU, pursuant to the FDIC's authority under the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. Section 1821(d). Pursuant to § 11(d)(2)(G)(i)(II) of the FDIA, 12 U.S.C. Section 1821(d)(2)(G)(i)(II), the FDIC, as receiver, may transfer any asset of WAMU without any approval, assignment or consent with respect to such transfer.

13. The Assignment of Mortgage from the FDIC to Fannie Mae was recorded in the NYC Department of Finance Office of the City Register on September 15, 2009 under CRFN No.

---

10th Street and 4th Avenue in the Gowanus section of Brooklyn

4

2009000296508. A copy of said recorded Assignment of Mortgage is attached hereto as <u>Exhibit D</u>.

14. On or about April 11, 2011, Fannie Mae assigned the Mortgage to JPMorgan Chase Bank, N.A. ("<u>JPMorgan</u>") as evidenced by a certain Assignment of Security Instrument. The Assignment of Security Instrument was recorded in the NYC Department of Finance Office of the City Register on April 18, 2011 under CRFN No. 2011000139933. A copy of the recorded Assignment of Security is annexed hereto as <u>Exhibit E</u>.

15. On or about September 27, 2011, JPMorgan assigned the Mortgage to FTBK as evidenced by an Assignment of Mortgage. The Assignment of Mortgage from JPMorgan to FTBK was recorded in the NYC Department of Finance Office of the City Register on October 16, 2012 as CRFN: 2011000387476. A copy of the recorded Assignment of Mortgage is annexed hereto as <u>Exhibit F</u>.

16. The Debtor defaulted under the terms of the Note and Mortgage by failing to make the payment due on April 1, 2009 (the "<u>Default</u>"), resulting in the commencement of the underlying foreclosure action, which was commenced on November 5, 2010, by Fannie Mae's (the "<u>Foreclosure Action</u>") filing a Summons, Complaint and Notice of Pendency in the Supreme Court of the State of New York, Kings County under index number 27411/10.

17. On November 23, 2010, Fannie Mae filed an *ex parte* application in the Foreclosure Action to manage the Property based upon both the express terms of the Mortgage[2] and New York Real Property Law ("<u>RPL</u>") § 254(10).

18. On March 23, 2011, the Court in the Foreclosure Action appointed Gregory M.

---

[2] Paragraph 5.3 of the Mortgage provides in part "Upon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand, at the option of Lender and Lender may (a) have a receiver appointed as a matter of right on an *ex parte basis* without notice to Borrower and without regard to the sufficiency of the Property…"

LaSpina as Receiver over the Debtor's Property.

19. The Debtor defaulted in the Foreclosure Action and on March 23, 2011, FTBK's predecessor-in-interest moved for the appointment of a Referee to Compute the Sums due and owing on account of the Note and Mortgage.

20. By Order dated November 28, 2011 and filed in the office of the Clerk of the Supreme Court, Kings County, on the December 8, 2011, Honorable Anthony J. Cutrona, J.S.C., substituted FTBK as the Plaintiff in the Foreclosure Action.

21. By Order dated November 30, 2012 and entered on January 4, 2013, the Honorable Anthony J. Cutrona, appointed Bruno F. Codispoti, Esq. as the Referee to Compute the Sums Due and Owing to Plaintiff.

22. On June 28, 2013 (the "<u>Petition Date</u>"), the Debtor filed the instant Chapter 11 Bankruptcy Petition. Upon information and belief, on the Petition Date, the principal of the Debtor an the Debtor's alleged vice-president, Nick Gordon ("<u>Gordon</u>") forced his way into the Property, changed the locks to exclude the Receiver and his appointees (even though the Receiver has advised that he has not turned over the Property to the principal of the Debtor), and began to harass various rent-stabilized tenants at the Property and threaten various tenants with a forced eviction through physical violence.

23. Approximately one-dozen of the tenants at the Property have come forward and supplied the Receiver's managing agent with hand-written letters, expressing their concern for their safety and the safety of their families at the Property since the events that transpired since the Petition Date. Copies of those letters will be transmitted to Chambers under seal upon the filing of this Application, as a public filing on the Court's docket may cause unnecessary risk to those tenants' safety.

24. Furthermore, the Receiver's Affirmation advises that at the time of the commencement of the Receivership, the Debtor failed and/or refused to turn over or account to the Receiver for any of the tenants' security deposits.

25. In addition, and as set forth in the Receiver Affirmation, at the time of the commencement of the Receivership, there were no less than **three-hundred and sixteen (316)** open Housing, Preservation and Development ("HPD") violations at the Property as of September 27, 2011. The laundry list of violations included, but was not limited to, an aggregate of 32 Class A violations, 228 Class B violations, and 56 Class C violations.

26. Since the commencement of the Receivership, the Receiver, along with the help of FTBK have reduced and/or removed no less than twenty-eight (28) Class A violations, one-hundred and eighty-seven (187) Class B violations, and one (1) Class C violation, for a total of two-hundred and sixteen (216) violations removed.

27. It is also apparent from a cursory review of the Debtor's petition, that the Debtor failed to exercise the diligence necessary to identify various creditors in its Petition and schedules. Specifically, the Debtor failed to list the outstanding claims of (i) National Grid, which claim exceeds $40,000.00, and (ii) the claim for real property taxes owed to the New York City Department of Taxation and Finance in the approximate sum of $43,000.00

28. The Receiver has further advised that the violations at the Property stemmed from a lack of such basic and fundamental services at the Property such as failure to remove garbage which lead to infestations of mice and other vermin. In addition, there were serious and unaddressed problems with ceiling leaks and various other water leaks, lack of heat and hot water, mold, broken and unrepaired plumbing, broken windows, missing smoke detectors, and other violations.

29. It has also quickly become apparent that there is a tremendous conflict between

Gordon and the tenants at the Property, which, upon information and belief, stems of Gordon's repeated threats and various intimidation tactics imposed upon the tenants at the Property.

30. Astoundingly, the Receiver has advised that Gordon has a history of taking rent payments in cash from unsuspecting tenants, and thereafter, failing and or denying to credit those unsuspecting tenants with such rent payments.

31. In addition, as included in the Receiver's Affirmation that many tenants at the Property have reported that since Gordon forced his way back into the Property last Friday, he has resumed his attempt at removing tenants through intimidation tactics including advising that they will have to vacate unless they agree to pay amounts over and above the amounts contained in their valid, and legally binding leases.

32. As of the date of the Receiver's Affirmation, the Receiver has advised that not only has Gordon forced his way into the Property, but has engaged in at least three (3) or more physical altercations at the Property. The alleged altercations involved two site managers sent by the Receiver to monitor conditions at the Property, and also with the building superintendent, acting at the Receiver's direction, named Kenneth Moore. Each of these altercations required police intervention.

33. Receiver has been able to make substantial progress at the Property by the retention of the Receiver's Property Manager, Harry Horowitz, who has been especially receptive to the needs and problems of the tenants at the Property. In addition, the Receiver has retained counsel to prosecute and evict non-paying tenants.

34. Since the commencement of the Receivership on March 23, 2011, the Receiver reports that the Property has generated an income of approximately $1,115,088.51 as of June 30, 2013. Notwithstanding, the Property required disbursements for expenses through June 30, 2013 in the approximate amount of $983,500.64, including payments necessary for taxes, insurance and

water and sewer charges. Thus, the Property currently has resources at the Receiver's disposable in the approximate amount of $131,587.87. Thus, the amount of rents that the Receiver has been able to collect during his tenure as Receiver is inadequate to cover all of the utilities and the necessary repairs, outstanding liabilities to various creditors at the Property, much less debt service at the Property.

35. In addition, it appears that the Debtor failed to pay any real property taxes on the Property since the commencement of the Receivership on or about October 27, 2011, and as a result, such expenses for taxes and insurance have been paid out of the Receivership bank account.

## RELIEF REQUESTED

36. Based on the foregoing, and the accompanying Memorandum of Law as well as the information set forth in the Affirmation of the Receiver, and the Affidavit of Joshua Zegan, FTBK seeks entry of an Order, pursuant to 11 U.S.C. § 543(d) of the Bankruptcy Code: (i) authorizing the Receiver to remain in possession, custody, and control of the Debtor's Property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. §§ 543(a) and (b), including pending resolution of this motion; (iii) authorizing the Receiver to maintain and operate the Property in the ordinary course of business and pursuant to the Receivership Order pursuant to 11 U.S.C. § 543(c); and (iv) granting such other and further relief as the Court deems just and proper.

## NOTICE

37. Notice of this Motion has been provided to: the Office of the United States Trustee; counsel for the Debtor; and all parties having requested notice in the Debtor's chapter 11 case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, FTBK submits that no other or further notice is necessary.

**NO PRIOR REQUEST**

38. No previous application for the relief sought herein has been made is this or any other court.

**WHEREFORE**, FTBK respectfully request that this Court enter an Order; (i) authorizing the Receiver to remain in possession, custody, and control of the Debtor's property pursuant to 11 U.S.C. § 543(d); (ii) excusing the Receiver from any turnover requirement pursuant to 11 U.S.C. § 543(a) and (b), including pending resolution of this motion; (iii) authorizing the Receiver to maintain and operate the Property in the ordinary course of business and pursuant 11 U.S.C. § 543(c); and (iv) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 2, 2013

        KRISS & FEUERSTEIN LLP
        *Attorneys for FTBK Investor II LLC, as Trustee for*
        *NY Brooklyn Investor II Trust 19*

By:  *s/ Jerold C. Feuerstein*
      Jerold C. Feuerstein (JF9829)
      360 Lexington Avenue, Suite 1200
      New York, NY 10017
      (212) 661-2900
      (212) 661-9397 fax