UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

Prime Properties of New York, Inc.,

                                             Debtor.

-------------------------------------------------------------X

Case No. 1:13-44020-cec

Chapter 11

Hon. Carla E. Craig
United States Bankruptcy Judge

# DISCLOSURE STATEMENT
## OF SECURED CREDITOR FTBK INVESTOR II LLC, AS TRUSTEE FOR NY BROOKLYN INVESTOR II TRUST 19'S PLAN OF LIQUIDATION FOR PRIME PROPERTIES OF NEW YORK, INC.

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.

*Attorneys for FTBK Investor II LLC, as Trustee for NY Brooklyn Investor II Trust 19*

Dated:  New York, New York
        February 3, 2014

FTBK Investor II LLC, as Trustee for NY Brooklyn Investor II Trust 19 ("FTBK") has filed a *Secured Creditor's Plan of Liquidation for Prime Properties of New York, Inc.* (the "Debtor") dated January 29, 2014 (the "Plan"), with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  This *Disclosure Statement for Secured Creditor's Plan of Liquidation for Prime Properties of New York, Inc.* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan to sell substantially all of the assets of the estate of the Debtor, pursuant to § 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement.  Unless otherwise defined herein, the meaning of all capitalized terms used in the Disclosure Statement shall have the meaning ascribed to them in the terms defined in Article 1 of the Plan.

**FTBK believes that Confirmation of the Plan is in the best interests of Creditors.**

**SUMMARY OF THE PLAN**

The Plan provides for FTBK to serve as the stalking horse bidder, subject to higher or better offers, at an auction of the Debtor's real property and improvements thereon located at 300-304 10th Street, Brooklyn, New York 11215 (Block 1016; Lots 2 and 5) (the "Property") in accordance with the provisions of the Bankruptcy Code, to be conducted immediately following the confirmation of the Plan (the "Auction").

The proceeds generated from the Auction, in addition to the cash being held by the State Court appointed Receiver (the "Receivership Funds") will be utilized to fund distributions under the Plan.  In this regard, FTBK has agreed to serve as the stalking horse bidder at the Auction, subject to higher and better offers, by credit bidding an amount equal to the FTBK Allowed Secured Claim (the "FTBK Bid").  FTBK reserves its right to bid in excess of its full credit bid, in Cash, in any amount bid in excess of its Allowed Secured Claim.  If FTBK is the Successful Purchaser, its nominee shall take title to the Property free and clear of all liens, except that its election ownership shall be subject to the Mortgage, but FTBK shall not pursue any further action against the Debtor for a deficiency.  In addition, if FTBK is the Successful Purchaser of the Property at the Auction it will accept less than the amount of its full Allowed Secured Claim so as to ensure any Allowed Claims and Administrative expenses that have not been paid with the Receivership Funds will receive the distributions provided for in the Plan (the "Carve Out").  For the avoidance of doubt, the Carve out shall be an amount equal to the amount of Claims entitled to a distribution under the Plan which remain after the Receivership Funds have been exhausted.   In order to be considered a higher and better offer than the FTBK Bid, a proposed purchaser at the Auction must bid in an amount sufficient to pay the FTBK Allowed Secured Claim in full, the expenses of the sale, the Carve Out plus $50,000.00.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan.  The figures set forth in the table below represent FTBK's best estimate of the total amount of Claims and Interests in the Case.  These estimates have been developed by FTBK based on an analysis of the Schedules filed by the Debtor, documents provided by the Debtor's principal, Proof of Claims filed by Creditors, and certain other documents of public record.  Although FTBK believes that the amounts of the Claims set forth below are substantially

correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Claims or Interests[1] |
|---|---|---|---|
| 1 | IRS Tax Claim | Impaired | $1,656,656.29[2] |
| 2 | Priority Claims (Non-IRS) | Unimpaired | $252.75 |
| 3 | FTBK Secured Claim | Impaired | $13,934,681.19[3] |
| 4 | General Secured Claims | Unimpaired | $88,288.45 |
| 5 | General Unsecured Claims | Impaired | $240,370.81 |
| 6 | Equity Interests | Impaired | $0.00 |

## CONFIRMATION OF THE PLAN

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, **on _____, 2014 at _____.m., Eastern Standard Time, in the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Courtroom 3529, Brooklyn, New York 11021.** The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before _____, 2014 at _____.m. EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. FTBK intends to seek Confirmation of the Plan at the Confirmation Hearing. **FTBK believes that the Plan satisfies all applicable requirements of §§ 1129(a) and 1129(b) of the Bankruptcy Code.** Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan.

---

[1] The amounts set forth in this schedule are not, and should not be deemed admissions by FTBK as to the validity or amount of any claim and FTBK reserves all rights to object to any claim in this case.

[2] This amount is based upon the Claim filed by the IRS on August 23, 2013, as Claim No. 3-1 in the Court's claims register, in the aggregate amount of $1,656,656.29 which is the estimated tax due as a result of the Debtor's failure to file tax returns for the tax years 2009-2012 prior to the Petition Date. As of January 29, 2014, the Debtor has filed all outstanding returns (the "Returns") through 2011. Based upon the information contained in the Returns, the Class 1 claim of the IRS should be withdrawn, amended, expunged and/or reduced to $0.00, as the Debtor has provided copies of the Debtor's tax returns for the 2009, 2010 and 2011 tax years to FTBK, each of which confirm that the Debtor does not owe any income tax to the IRS for the 2009, 2010 and 2011 tax years.

[3] This amount is the amount set forth in FTBK's proof of claim filed on September 23, 2013 as Claim Number 6-1and does not include any post-petition amounts which have accrued since the Petition Date, which will be added to this sum and are all a part of FTBK Allowed Secured Claim.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Debtor or its assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

VOTING – SUMMARY

**THE PLAN PROVIDES FOR PAYMENT TO EACH CLASS OF CREDITORS WHICH MAY VARY BY CLASS. CREDITOR HOLDING CLAIMS THARE ARE IMPAIRED, ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY FTBK. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF FTBK, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement and the accompanying ballots are being furnished by FTBK to the Debtor's known creditors pursuant to § 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of a plan of liquidation. The Plan is filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[4]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to object to the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not

---

[4] A password is necessary for access to view documents on the Internet.

constitute an admission by FTBK of the existence, validity, allowance, or amount of any such claim, document or agreement.  FTBK expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.  While FTBK believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents.  Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof.  In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.  In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."  No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by FTBK, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein.  The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan.  Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan.  Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

Solicitations of votes to accept or reject the Plan may be made by FTBK in accordance with this Disclosure Statement and § 1125 of the Bankruptcy Code.  No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto.  You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### PLAN PROPONENT'S RECOMMENDATION

In FTBK's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternative, including liquidation under Chapter 7.  See "ALTERNATIVES TO THE PLAN." FTBK believes that in a Chapter 7 liquidation, administrative costs will be greater, and it is unlikely that any creditor with Claims of lesser priority than FTBK would receive a distribution on account of their Claims.

**FTBK BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND URGES EACH CREDITOR ENTITLED TO VOTE TO ACCEPT THE PLAN**

# BACKGROUND

## THE DEBTOR

The Debtor's business consists of the ownership and operation of the Property. Upon information and belief, the Property consists of two adjacent five-story, residential apartment buildings, which collectively contain a total of fifty-five (55) units, fifty-two (52) of which are residential units on the corner of 10th Street and 4th Avenue, Brooklyn New York.   Upon information and belief, the Debtor's sole source of income is from the rents generated by the Property.   In this regard, in the Petition the Debtor identified itself to be *Single Asset Real Estate* by checking the box marked "Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)" under the section of the Petition labeled "Nature of Business".

The Debtor's principal and its 100% shareholder, Nick Gordon, managed the Property until March 2011, when management of the Property was taken over by the Receiver. Prior to the Receiver's appointment, there were well documented disputes between Nick Gordon and the tenants with respect to the maintenance and upkeep of the Property.

## FTBK

FTBK is the Debtor's sole mortgagee, holding a claim in the amount of $13,934,681.19, which claim is secured against the sole asset of the Debtor's estate, based on a note and mortgage described in detail below.  FTBK's claim was filed in the Court's Claims Register[5] on September 23, 2013 as Claim No. 6.

FTBK is a secured creditor of the Debtor by virtue of a series of assignments (discussed below) of a  Promissory Note (the "Note") executed by the Debtor on or about April 30, 2007 in favor of Washington Mutual Bank ("WAMU"), in the original principal sum of $8,000,000.00, which is secured by (among other things) a Mortgage (the "Mortgage") that encumbers the Property.

On the eve of a foreclosure sale in the Foreclosure Action on June 28, 2013 (the "Petition Date"), the Debtor filed its second[6] petition (the "Petition") for Chapter 11 bankruptcy relief before the Bankruptcy Court for the Eastern District of New York which resulted in a stay of the Foreclosure Action.

On or about August 18, 2009, the Mortgage was assigned to Fannie Mae by a certain Assignment of Mortgage from the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for WAMU, pursuant to the FDIC's authority under the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. Section 1821(d).   The Assignment of Mortgage from the FDIC to Fannie Mae was recorded in the NYC Department of Finance Office of the City Register on September 15, 2009 under CRFN No. 2009000296508.

---

[5] Although the Debtor listed FTBK in its schedules as the Debtor's only creditor holding a claim of $8,500,000.00, it is significant that the Debtor's total claims came in at an amount not less than $15,835,252.49.

[6] Notably the docket reflects the Debtor's prior filing as Case Number: 09-46912-jbr, which was dismissed on November 16, 2010.

On or about April 11, 2011, Fannie Mae assigned the Mortgage to JPMorgan Chase Bank, N.A. ("JPMorgan") as evidenced by a certain Assignment of Security Instrument. The Assignment of Security Instrument was recorded in the NYC Department of Finance Office of the City Register on April 18, 2011 under CRFN No. 2011000139933.

On or about September 27, 2011, JPMorgan assigned the Mortgage to FTBK as evidenced by an Assignment of Mortgage.  The Assignment of Mortgage from JPMorgan to FTBK was recorded in the NYC Department of Finance Office of the City Register on October 16, 2012 as CRFN: 2011000387476.

The Debtor defaulted under the terms of the Note and Mortgage by failing to make the payment due on April 1, 2009 (the "Default"), resulting in the commencement on November 5, 2010, of a foreclosure action  in the Supreme Court of the State of New York, Kings County under index number 27411/10 (the "Foreclosure Action").   In connection with the Foreclosure Action, by *Order Appointing Receiver* of the Hon. Anthony J. Cutrona, J.S.C. dated March 23, 2011, Gregory M. LaSpina, Esq., was appointed Receiver (the "Receiver") over the Debtor's Property.

**SIGNIFICANT EVENTS IN THIS CHAPTER 11 CASE**

## RETENTION OF PROFESSIONALS

11 U.S.C. § 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

By Order of this Court dated August 14, 2013 [docket item 30], Kera & Graubard ("Debtor's Counsel") was retained as counsel to the Debtor *nunc pro tunc* to the Petition Date.

## THE PETITION AND SCHEDULES

In its Petition and Schedules, the Debtor identified FTBK as its only creditor.  Contrary to the Debtor's disclosures, there are have been a total of seven (7) timely filed claims against the Debtor's estate, totaling $15,920,249.49.

Based on the Petition, Schedules the Debtor's sole source of gross income is derived from collecting rents from tenants residing at the Property.  This is consistent with the Debtor's designation on the Petition as the nature of its business is a Single Asset Real Estate entity.

## OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Eastern District of New York, the Debtor has filed monthly operating reports ("MOR's") with the Bankruptcy Court for the periods from the Petition Date through December 30, 2013.  The MOR's contain a disclaimer which provides that that "*All rent is being paid to the state court receiver… Debtor is waiting for information from the Receiver.*" Copies of the monthly reports

that the Debtor have filed may be obtained from the Bankruptcy Court during normal business hours, or may be obtained upon written request made to counsel for the Debtor.

**THE TURNOVER MOTION**

On July 5, 2013 the Debtor filed a Motion to Compel the Receiver to turn over the Property. On July 5, 2013, FTBK filed a Motion to Excuse Turnover. In connection with the turnover motions, the Court scheduled an evidentiary hearing and FTBK sought discovery and the deposition of the Debtor's principal. After the motions had been briefed, and facing a motion to compel discovery, the Debtor withdrew its motion rather than produce Nick Gordon for a deposition and FTBK's motion to excuse turnover was granted.

**BAR DATE**

In accordance with the requirements of § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. Notably, FTBK was indicated by the Debtor to be the Debtor's only creditor. Pursuant to § 501 of the Bankruptcy Code any creditor or interest holder may file a Proof of Claim or Interest and, unless disputed, such filed Proof of Claim or Interest supersedes the amount and priority set forth in the Debtor's schedules. On August 14, 2013, the Bankruptcy Court entered an Order [docket item 31] fixing September 23, 2013 as the last date for filing Proofs of Claim in the Debtor's case (the "Bar Date").

**THE DEBTOR'S PLAN & THE EXCLUSIVITY PERIOD**

Due to the Debtor's designation as Single Asset Real Estate, the Debtor was required to file a Plan and Disclosure Statement which have a reasonable possibility of being confirmed within a reasonable time or commence making monthly payments to FTBK on or before September 28, 2013 (the "Deadline"). The Debtor failed or refused to commence making monthly payments to FTBK.

In a blatant attempt to avoid the repercussions of a motion for relief from the automatic stay by FTBK pursuant to 11 U.S.C. § 362(d)(3), and in light of the Debtor's failure to make any adequate protection payments to the Secured Creditor since the Petition Date, on September 18, 2013, the Debtor filed a bare bone Chapter 11 Plan of Reorganization (the "Debtor's Plan") and Disclosure Statement ("Debtor's Disclosure Statement") [docket items 41 and 42 respectively], which failed to assert any means by which the Debtor intended to reorganize in Chapter 11.

To date, the Debtor has failed to set a hearing in connection with the approval of its Disclosure Statement, and has instead, moved for dismissal of this case. In response, FTBK has opposed the Debtor's request for dismissal by cross-moving the Bankruptcy Court for an Order compelling the Debtor to produce the outstanding tax returns, and further relief, including a finding that that the Debtor and its principal, Nick Gordon, are in civil contempt for their failure to comply with the Orders of the Bankruptcy Court for their failure to comply with their obligation to file tax returns on behalf of the Debtor.

The Debtor's Plan and Debtor's Disclosure Statement merely speculate and allege that the Debtor may satisfy the claim of [FTBK] by payment in full upon a refinance or sale of the Debtor's real Property.  See Debtor's Disclosure Statement at page 3, ¶ 1.  In addition, the Debtor's Disclosure Statement provides that the Debtor shall reduce its obligation to the IRS by filing outstanding tax returns.  The Debtor's Disclosure Statement further provides that the Debtor shall have the ability to pay general unsecured creditors one-hundred percent (100%) of their claims

Notably, the Debtor's exclusive right to file a plan of reorganization in this case expired on or October 26, 2013.

### FTBK'S MOTION FOR RELIEF FROM STAY

On October 2, 2013, FTBK moved for relief from stay pursuant to 11 U.S.C. § 362(D)(3). By Order dated November 1, 2013, FTBK's Motion was granted.

### THE DEBTOR'S MOTION TO DISMISS

On November 21, 2013, the Debtor filed a Motion for Voluntary Dismissal of Chapter 11 Petition.  In response, FTBK Cross-Moved to compel discovery and opposition to the Motion to Dismiss.  The motions are scheduled to be heard on February 5, 2014.

### SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

### THE PROPOSED SALE

By way of FTBK's Disclosure Statement and Plan, FTBK has proposed to purchase the Property by credit bidding up to the amount of its Allowed Secured Claim (which includes all accruals post-petition), which as of the date hereof, is estimated to have grown to exceed $14,168,454.00, and to pay the Carve Out if, **and only if**, it is the Successful Purchaser of the Property at the Auction.  If FTBK is the Successful Purchaser, its nominee shall take title to the Property free and clear of all liens, except that its election ownership shall be subject to the Mortgage, upon which FTBK shall not pursue any further action against the Debtor.  In addition to any proceeds received from the Auction of the Property (and the Carve Out if applicable), the Receivership Funds shall be used to fund the distribution under the Plan.  FTBK's authority to credit bid the amount of its claim is subject to approval of this Court, and also to higher and better offers in accordance with proposed bid procedures set forth in FTBK's motion to be filed along with this Disclosure Statement, seeking entry of an order (I) Approving Disclosure Statement, Fixing Time for Filing Objections to the Plan of Liquidation and Fixing Time for the Confirmation Hearing; (II) Approving Bid Procedures for Sale Proposed Under the Plan; and (III) Granting Related Relief (the "<u>Disclosure Statement Motion</u>").  To be considered  "higher and better" than that of FTBK's Bid, a prospective bidder must bid the amount of FTBK's Allowed Secured Claim, plus the expenses of the Auction, an amount equal to the Carve Out,

plus $50,000.00 (the "Overbid").  The Order approving the results of the Auction shall include the provision deeming the Purchaser of the Property to be a purchaser in good faith of the Debtors' Properties entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code;

For marketing purposes, FTBK will place advertisements in the New York Real Estate Journal and send notices to all parties that FTBK is aware of, that have expressed interest in the Property.  Other than the holders of Class 1 Claims (IRS), FTBK does not intend on objecting to the claims of creditors which have been filed in the Court's claims register as of the date hereof.

The Auction will be conducted immediately following the Confirmation of the Plan by William Manion of JP&R, Inc.  The Debtor shall be required to execute any and all documents necessary to effectuate the conveyance of the Property in accordance with the terms of the Plan.

## Classification of Claims and Interests

Classification of claims is governed, in part, by §§ 1122 and 1123(a) of the Bankruptcy Code.  11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4).  11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into Five (5) classes of Claims and one (1) class of Interests:

Class 1  -    IRS Tax Claims
Class 2  -    Priority Claims (Non-IRS)
Class 3  -    FTBK Secured Claim
Class 4 -    General Secured Clams
Class 5  -    General Unsecured Claims
Class 6  -    Equity Interests

Only claims of classes of creditors that are impaired may vote under the Plan.  The votes of Holders of Claims in Classes 1, 3 and 5 are therefore being solicited, are entitled to vote to accept or reject the Plan.  Although the Claims in Class 6 are estimated to be $0, and are listed as impaired, since Equity Interest Holders will receive no distribution under the Plan they are deemed to have rejected the Plan.  Claims which are Unimpaired are NOT entitled to vote and are deemed to have accepted the Plan.  As set forth in Article 2 of the Plan, pursuant to § 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 – IRS Tax Claims.**  Class 1 consists of all Allowed Claims, other than Administrative Claims or Bankruptcy Fees of the IRS for unpaid and outstanding income taxes allegedly owed by the Debtor.  Certain Claims for taxes and the payment of expenses incurred by

the Debtor subsequent to the Petition Date may be entitled to priority treatment under § 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 2 – Priority Claims (Non-IRS)**. Class 2 consists of New York State Department of Taxation and Finance claim for real estate taxes.

**Class 3 – FTBK Secured Claim.** Class 3 consists of the FTBK Allowed Secured Claim.

**Class 4 – General Secured Claims.**   Class 4 Claims consist of the Allowed Secured Claim of City of New York Housing Preservation and Development ("HPD") against the Property for emergency repairs allegedly performed at the Property and the statutory interest which has accrued thereon (see Claim 9-1) and the Allowed Secured Claim of the NYC Office of Administrative Trials and Hearings (8-1) and as well as the secured portion of the NYS DEPT OF TAX & FINANCE (Claim 2-2).

**Class 5 General Unsecured Claims.**   Class 6 consists of General Unsecured Claims of Consolidated Edison Company of New York, Inc. ("ConEd"), The Brooklyn Union Gas Company d/b/a National Grid ("National Grid") and the 2 claims of HPD (see Claim 4-1 and 5-1).

**Class 6 – Equity Interests.** Class 6 consists of all Equity Interests in the Debtor.

TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of impaired and unimpaired Claims classified in Article 3 of the Plan as follows:

**Class 1 – IRS Tax Claim.**  FTBK has reason to believe that all or a portion of claim(s) in Class 1, which allegedly consist of 2009-2012 past due income taxes is wholly improper and should be disallowed and/or expunged in their entirety since those claims were based entirely on the Debtor's failure to file timely income tax returns, which situation the Debtor advises has been remedied.

Pursuant to the Plan, FTBK intends on objecting to the claim of the Internal Revenue Service ("IRS"), which holds a Class 1 Claim in the aggregate amount of $1,656,656.29 and was filed on August 23, 2013, as Claim No. 3-1 in the Court's claims register, since FTBK has reason to believe that the over inflated claim of the IRS is based entirely upon the Debtor's failure to timely prepare and file tax returns with the Internal Revenue Service for the tax years 2009-2012 prior to the Petition Date.

Notwithstanding, as of the date hereof, Debtor's counsel has advised FTBK, that the Debtor has since prepared and/or filed all outstanding returns (the "Returns") with the IRS, and that based upon the information contained in the Returns, the Class 1 claim of the IRS should be

withdrawn, amended, expunged and/or reduced to $0.00.  Notably, as of the date hereof, the Debtor has provided FTBK with copies of the Debtor's tax returns for the 2009, 2010 and 2011 tax years, each of which confirm that the Debtor does not owe any income tax to the IRS for the 2009, 2010 and 2011 tax years.  In addition, the Debtor has further advised FTBK that the tax returns for the 2012 tax year has been prepared by the Debtor's accountant, Mohamed A Ezzat, C.P.A. ("Ezzat"), notwithstanding the fact that Ezzat was never formally retained by Debtor or approved by the Court in this case.

In furtherance thereof, in connection with the filing of this Plan and Disclosure Statement, FTBK intends on filing an objection to the IRS Tax Claim since the Debtor has provided FTBK with copies of tax returns which it represents were filed with the IRS at this time, and which serve to confirm that the Debtor does not owe any amount to the IRS by way of income taxes for the 2009-2012 tax years.

Notwithstanding, and subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of priority claims, Holders of Class 1 Claims that survive an objection thereto, shall receive the following treatment:  payment on the Effective Date, or as soon as practicable after such Claims become Allowed Claims (i)  the full amount of its Allowed Class 1 Claim or (ii) as may be otherwise agreed in writing between either FTBK and/or the Debtor on the one hand, and the holder of such Claim on the other hand.  Holders of Class 1 Allowed Claims are impaired and are entitled to vote.

**Class 2- Priority Claims (non-IRS).**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, on the Effective Date, in full satisfaction, release and discharge of a Class 2 Claim shall receive cash in the full amount of its Allowed Priority Tax Claim.  Class 2 Claims aggregate to approximately **$252.75.**  Holders of Class 2 Allowed Claims are unimpaired and are not entitled to vote.

**Class 3 – FTBK Secured Claim**.  In full satisfaction, release and discharge of FTBK Secured Claim, the holder of the FTBK Secured Claim shall receive either (a) cash in the full amount of the FTBK Allowed Secured Claim or (ii) the Property by virtue of the FTBK Bid.  The FTBK Allowed Secured Claim was $13,934,681.19 as of the Petition Date, and shall also include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums FTBK is entitled to pursuant to the Note and Mortgage incurred after the Petition Date.  In the event that the FTBK Bid is the successful bid at the Auction, in consideration for the transfer of the Property to FTBK or its nominee, FTBK shall agree to accept less than the amount of its Allowed Secured Claim.  In this regard, if FTBK shall only be obligated to pay the Carve Out, to the extent that all Claims entitled to receive a distribution after the Receivership Funds have been exhausted.  The Carve Out shall be used to pay Allowed Claims in the order of priority under the Bankruptcy Code after the Receivership Funds have been exhausted to pay any remaining Allowed Class 1 Claim, the Class 2 Claim, the Class 4 Claim, not more than 10% of the Class 5 Claims and a maximum of $175,000.00 for unclassified Administrative Expenses, Trustee's Fees and Bankruptcy Fees.  If FTBK or its nominee become the Successful Purchaser at the Auction,

the Property shall be conveyed subject to FTBK's existing Mortgage of record, however, FTBK shall not pursue any deficiency claims against the Debtor.

Nothing herein may be construed to mean that FTBK has limited or waived its entitlement to such additional amounts. Holders of Class 3 Allowed Claims are impaired and are entitled to vote.

**Class 4 - General Secured Claims.** Class 4 consists of the Secured Claims of City of New York Housing Preservation and Development against for emergency repairs allegedly performed at the property and the statutory interest which has accrued thereon and the secured claim of NYC Office of Administrative Trials and Hearings (Claim 8-1) as well as the secured portion of the Claim of the NYS Dept. of Tax & Finance (Claim 2-2). Allowed Secured Claims in Class 4 will be paid in full. Class 4 is unimpaired and not entitled to vote.

**Class 5 – General Unsecured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Unsecured Claims (including deficiency claims), on the Effective Date, each holder of an Allowed Unsecured Claim shall receive a pro rata distribution at an amount equivalent to ten (10%) percent of their Allowed Unsecured Claims from the Disbursing Agent. It is estimated that the Unsecured Creditors' Claims total not more than $240,370.81. Holders of Class 5 Allowed Claims are impaired and are entitled to vote.

**Class 6 – Equity Interests**. On the Effective Date, all Allowed Interests in the Debtor shall be extinguished. Holders of Class 6 Allowed Interests shall receive nothing on account of their Interests and are deemed to have rejected the Plan.

TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under § 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under § 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor' business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under § 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim. It is estimated that the Administrative Claims total not more than **$175,000.00.** In this regard, upon information and belief the Debtor's Counsel's Administrative Claim is not more than $25,000.00 and the Receiver's Administrative Claim does not exceed $150,000.00.

Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is at least thirty (30) days after the Effective Date.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor of its Estate under § 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately **$2,350.00.**

**Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor' professionals pursuant to § 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court. Unless otherwise agreed to in writing by the Debtor and the applicable professional, each professional must file with the Court and serve the Debtor with a writing indicating the sum of fees and expenses they intend to apply to the Court for reimbursement of and/or an award of, no later than three days prior to the Effective Date. Upon receipt of such notice, the Debtor must escrow sufficient funds, to be held in an interest bearing segregated account, in the amounts necessary to pay such claims when and if allowed by the Court.

**DISPUTED CLAIMS AND INTERESTS**

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) thirty (30) days after the Effective Date or (ii) 30 days after the date proof of such Claim or Interest is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules. FTBK deems all General Unsecured Claims of the Debtor as disputed and intends to file objections to same.

**DISTRIBUTIONS UNDER THE PLAN**

Article 7 contains provisions governing the making of distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest or (iii) such other times provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** FTBK's counsel shall be the Disbursing Agent to make distributions under the Plan for all claims. The Disbursing Agent shall not be compensated for services rendered under the Plan. The Disbursing Agent shall be entitled to compensation for services rendered under the Plan at its customary fee and reimbursement of all expenses incurred in the performance of its duties.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Neither the Debtor, FTBK, nor the Disbursing Agent shall be required to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent and such creditor shall forfeit its right to receive any distribution(s) under this Plan if such distribution is not claimed by the Entity entitled thereto before the later of (i) 120 days after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such disputed Claims. Cash held in reserve for disputed Claims will be held in trust for the benefit of the holders of such Claims.

Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent shall hold such cash in a segregated account in accordance with § 345 of the Bankruptcy Code, and may invest any cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds. Any segregated amounts remaining after all Disputed Claims have been resolved will be paid to the Allowed Interests.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the Closing Date of the sale of the Property.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Effective on and as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected in accordance with § 365 of the Bankruptcy Code. FTBK does not believe that there are any executory contracts and unexpired leases which would be subject to rejection.

**Rejection Claims**. Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims. A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Successful Purchaser, the Debtor, their successors or their respective Property.

## TRANSFER OF ASSETS

Except as otherwise provided in the Plan, on the Effective Date all of the assets and Property of the Estate shall vest in the Successful Purchaser, free and clear of all Liens, Claims and encumbrances and the Debtor shall be required to executed any and all documents needed to facilitate the transfer. On the Effective Date any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

## FUNDING

The Plan will be funded by monies made available as a result of the Auction of the Property, the Receivership Funds, and the Carve Out, if applicable. The sums contained in the Receiver's account are currently estimated to be not less than $227,000.00.

The Debtor shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtor shall not interfere with the Plan Administrator in the performance of his duties. The Confirmation Order shall contain appropriate provisions consistent with § 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under §§ 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of monthly operating reports and post-confirmation status reports which post-confirmation status reports shall be filed until the closing of the sale of the Property, dismissal or conversion of this case, whichever is earlier. Quarterly fees payable to the Office of the United States Trustee shall be paid by the Plan Administrator until entry of a final decree, dismissal or conversion of this case, whichever is earlier.

## TRANSFER TAXES

Pursuant to § 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the sale of the Property to the Successful Purchaser or any successful purchaser) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan.

## REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by FTBK at any time before the substantial consummation of the Plan, as provided in §§ 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so

long as the plan, as modified, continues to meet certain technical requirements of §§ 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan.  Prior to Confirmation, if a proponent files modifications to a plan, pursuant to § 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of § 1127(a); however, the proponent of a modification to a plan must comply with § 1125 of the Bankruptcy Code with respect to the plan as modified.  In other words, if a modification materially alters the treatment of any Creditor who has accepted the Plan, FTBK will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

FTBK may revoke or withdraw the Plan at any time, for any reason, prior to or after the entry of the Confirmation Order.  If FTBK revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

Plan payments are to be made from the Sale Proceeds.  There can be no assurance that the sale of the property will occur.

## CONFIRMATION OF THE PLAN

All distributions to Creditors are contingent on the Plan being confirmed by this Court.  Otherwise, the Debtor is not obligated to make the payments required hereunder.

## CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan**.  The Confirmation Hearing is scheduled to commence on _____, 2014 at _____.m. in the United States Bankruptcy Court, One Bowling Green, New York, New York, Courtroom 617.**  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before _____, 2014** Objections must be served

upon (i) Counsel to the Debtor: Kera & Graubard, Esq., 240 Madison Avenue, 7th Floor, New York, New York 10016 - Attn: M. David Graubard, Esq., (ii) Counsel to FTBK, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq., (iii) United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.   These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) FTBK has proposed the Plan in good faith, (iv) FTBK has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible.   FTBK believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**   The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case.   The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the Chapter 7 case.   Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor' business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.   Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.   In addition, Chapter 7 costs would include any liabilities incurred or

assumed pursuant to the transactions necessary to effectuate the liquidation.  Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to § 1102 of the Bankruptcy Code.

After consideration of the effects that a Chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a Chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, and (ii) the substantial amount of secured obligations in this case, FTBK believes that in a Chapter 7 liquidation, FTBK would receive less than the full amount of its secured claim and that there would be no funds available for distribution to any junior class of creditors.

**Liquidation Analysis.**  FTBK has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which exceeds the distribution that such person would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan generally provides for the Debtor' liquidation and the payment of a substantial portion, if not all, of the Debtor' outstanding secured indebtedness and the establishing of the Unsecured Creditors Fund for pro rata distribution to the Debtor's unsecured creditors.

The proposed Plan provides for the sale of the Property, the Debtor's sole asset, pursuant to an auction sale. Any Chapter 7 liquidation would effectuate the same sale, but would be burdened by the attendant costs and commissions of a Chapter 7 trustee and its counsel. Moreover, all Creditors are receiving the full amount of their claims in this case, and would not receive more in any Chapter 7 liquidation. Accordingly, FTBK believes that the Plan provides Creditors with a greater distribution than they would be entitled to receive in a chapter 7 liquidation.  A copy of FTBK's liquidation analysis is annexed hereto as Exhibit "A".

**Feasibility.**   For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the sale of the Debtor's Property to the Successful Purchaser.  Thus the Plan meets the feasibility requirements of the Bankruptcy Code.

## EFFECT OF CONFIRMATION

### INJUNCTION

Except **(a)** as otherwise provided in the Plan; or **(b)** as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: **(y)** the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and **(z)** the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, the successful purchaser or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.

### RELEASE

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to §§ 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor' business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities for any claim, suit

22

or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.

LIMITATION OF LIABILITY

11 U.S.C. § 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  Pursuant to § 1125(e), as set forth in Article 9 of the Plan, neither the Debtor, FTBK, the Stalking Horse Bidder, or Purchaser nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor' professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 9 of the Plan.

ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of liquidation involving a sale to a different purchaser; or (c) the dismissal of the Debtor' case.

FTBK believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

FTBK reserves its right to file any amended plan and/or disclosure statement.

CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based

upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

FTBK has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will FTBK, or the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. FTBK offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON**

**THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) FTBK's counsel, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq. or (ii) may be retrieved from the Court's web site at https://ecf.nyeb.uscourts.gov/cgi-bin/login.pl (provided such party has PACER access) by searching Case No.: 1:13-44020-cec.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

### CONCLUSION

FTBK believes that confirmation of the Plan is in the best interests of all Creditors.

**Dated:** New York, New York
February 3, 2014

KRISS & FEUERSTEIN LLP
*Attorneys for FTBK Investor II LLC, as Trustee for*
*NY Brooklyn Investor II Trust 19*
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900

By:    *s/ Jerold C. Feuerstein*
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.

FTBK Investor II LLC, as Trustee for
NY Brooklyn Investor II Trust 19

By:    *s/ Joshua Zegen*
Joshua Zegen, Member